Case No. 09-2982

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

CORTNEY HASSLER,

**Plaintiff-Appellant,**

v.

SOVEREIGN BANK,

**Defendant-Appellee.**

---

*Appeal from the United States District Court for the District of New Jersey,
Case No. 1-08-cv-05800 (Hon. Jerome B. Simandle)*

---

## *BRIEF OF PLAINTIFF-APPELLANT*

---

**CHIMICLES & TIKELLIS LLP**
Joseph G. Sauder  (PA ID No. 82467)
Benjamin F. Johns (PA ID No. 201373)
361 W. Lancaster Avenue
Haverford, PA  19041
(610) 642-8500

-and-

**Law Office of Christopher G. Hayes**
Christopher G. Hayes (PA ID No. 57253)
225 South Church Street
West Chester, PA 19382
(610) 431-9505

Dated:  October 5, 2009          *Attorneys for Plaintiff-Appellant*

# TABLE OF CONTENTS

STATEMENT OF JURISDICTION ........................................................1

STATEMENT OF ISSUES .................................................................1

STATEMENT OF THE CASE ..............................................................3

STATEMENT OF FACTS...................................................................4

I.      Sovereign's Personal Deposit Account Agreement................................4

II.     Sovereign's Deceptive Re-Ordering Practices.........................................7

III.    The District Court Opinion .............................................................9

STATEMENT OF RELATED CASES AND PROCEEDINGS.........................13

STANDARD OF REVIEW ...............................................................13

SUMMARY OF ARGUMENT............................................................13

ARGUMENT..............................................................................16

I.      The District Court Erred In Holding That The
        Account Agreement Authorized Sovereign To
        Re-Order And Manipulate Debit Transactions
        In The Manner Alleged By Hassler.........................................16

        A.      The District Court Did Not Apply The
                Correct Legal Standard In Determining
                Whether Sovereign Violated The NJCFA ...................................17

                i.      The NJCFA Should be Liberally Construed
                        in Favor of Protecting Consumers.......................................17

       ii.    The Question for the Fact Finder is Whether
             Sovereign's Account Agreement has the
             Capacity to Mislead the Average Consumer ....................19

       iii.   Sovereign's Account Agreement has the
             Capacity to Mislead the Average Consumer ....................24

  B.    To The Extent That It Is Appropriate To Resort
       To A Literal Definition Of The Word "Automatically,"
       It Is Synonymous With "Immediately" .......................................27

  C.    The Word "Automatically" Is Modified By "When"
       [A Purchase] "Is" [Made] In The Account Agreement...............30

  D.    Other Courts have Declined to Dismiss Consumer Fraud
       Claims in Similar Overdraft Cases Against Financial
       Institutions...........................................................................................32

II.  Sovereign Has Violated The Implied Covenant Of Good
Faith And Fair Dealing By *Always* Re-Ordering Debit
Transactions From Highest To Lowest....................................................35

  A.    Hassler Alleged that Sovereign Re-Ordered Debit
       Transactions for an Improper Purpose .........................................36

  B.    The District Court's Decision is Contrary to Closely
       Analogous Cases Decided in a Similar Context ..........................40

III.  Sovereign Has Been Unjustly Enriched By Re-Ordering The
Debit Transactions In The Manner Described In The Complaint .......46

CONCLUSION ..................................................................................................47

CERTIFICATE OF BAR MEMBERSHIP.............................................................49

CERTIFICATE OF COMPLIANCE WITH RULE 32(a)...................................50

CERTIFICATION OF ELECTRONIC FILING AND VIRUS CHECK...........51

CERTIFICATE OF SERVICE ............................................................................52

ADDENDUM...................................................................................................53

# TABLE OF CITATIONS

**Cases**                                                                              **Page(s)**

*Adamson v. Ortho-McNeil Pharm., Inc.,*
    463 F. Supp. 2d 496 (D.N.J. 2006)............................................19, 20, 22, 23

*Bak-A-Lum Corp. v. Alcoa Building Prods*
    351 A.2d 349 (N.J. 1976). .......................................................................38, 39

*Barry v. Arrow Pontiac, Inc.,*
    494 A.2d 804 (N.J. 1985) ........................................................................19, 26

*Brader v. Allegheny General Hospital,*
    64 F.3d 869 (3d Cir. 1995) .............................................................................10

*Brunswick Hills Racquet Club, Inc. v.*
    *Route 18 Shopping Ctr. Associates,*
    864 A.2d 387 (N.J. 2005) ...............................................................36, 37, 38

*Callahan v. A.E.V., Inc.,*
    182 F.3d 237 (3d Cir. 1999) .........................................................................10

*CTF Hotel Holdings v. Marriott International,*
    381 F.3d 131 (3d Cir. 2004) .........................................................................31

*Chattin v. Cape May Greene,*
    524 A.2d 841 (N.J. Super. Ct. App. Div. 1987) ...................................19, 20

*Cox v. Sears Roebuck & Co.,*
    647 A.2d 454 (N.J. 1994) ........................................................................18, 25

*Delaney v. American Enterprise Life Insurance Co.,*
    No. 06-5134, 2007 U.S. Dist. LEXIS 34699
    (D.N.J. May 11, 2007)..............................................................11, 20, 21, 22

*Elliott & Frantz, Inc. v. Ingersoll-Rand Corp.,*
    457 F.3d 312 (3d Cir. 2006) ....................................................................38, 39

*Farash & Robbins, Inc. v. Fleet Bank,*
    No. 07-3411, 326 Fed. Appx. 77 (3d Cir. 2009) ........................................13

*Gutierrez v. Wells Fargo & Co.,*
    622 F. Supp. 2d 946 (N.D.Cal. 2009) ...........................................39, 43, 44

*Gutierrez v. Wells Fargo & Co.,*
    No. 07-05923, 2008 U.S. Dist. LEXIS 70124
    (N.D.Cal. Sep. 11, 2008).......................................................................*passim*

*Hassler v. Sovereign Bank,*
    No. 1:08-cv-05800-JBS-KMW, 2009 U.S. Dist. LEXIS 49558
    (D.N.J. June 12, 2009) ..................................................................................10

*Homa v. America Express Co.,*
    558 F.3d 225 (3d Cir. 2009) .........................................................................18

*Huffmaster v. Robinson,*
    534 A.2d 435 (N.J. Super. Ct. Law Div. 1986) ........................................18

*Kugler v. Romain,*
    279 A.2d 640 (N.J. 1971) .............................................................................18

*Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.,*
    247 F.3d 44 (3d Cir. 2001) ..........................................................................13

*Miller v. American Family Publishers,*
    663 A.2d 643 (1995) ......................................................................24, 25, 26

*Mertens v. Hewitt Associates,*
    508 U.S. 248 (1993) ......................................................................................31

*Meshinsky v. Nichols Yacht Sales, Inc.,*
    541 A.2d 1063 (N.J. 1988) ...........................................................................18

*Netflix, Inc. v. Blockbuster, Inc.*,
477 F. Supp. 2d 1063 (N.D.Cal. 2007) .......................................................12

*New Castle Cty. v. National Union Fire Ins. Co.*,
174 F.3d 338 (3d Cir. 1999) .........................................................................31

*New Jersey Citizen Action v. Schering-Plough Corp.*,
842 A.2d 174 (N.J. Super. Ct. App. Div. 2003) .....................11, 20, 23, 24

*North Am. Specialty Ins. Co. v. Chichester Sch. Dist.*,
No. 99-2394, 2000 U.S. Dist. LEXIS 10745 (E.D. Pa. July 20, 2000).......31

*Palmeri v .LG Electronics USA, Inc.*,
No. 07-5706, 2008 U.S. Dist. LEXIS 58374 (D.N.J. July 30, 2008).........47

*Perdue v. Crocker Nat'l Bank*,
38 Cal. 3d 913 (Cal. 1985) ...........................................................................45

*Prof'l. Cleaning and Innovative Building Services, Inc. v. Kennedy
Funding, Inc.*,
No. 06-1405, 245 Fed. Appx. 161 (3d Cir. Aug. 7, 2007) ........................18

*In re: Schering-Plough Corp. ERISA Litig.*,
420 F.3d 231 (3d Cir. 2005) .........................................................................10

*Sons of Thunder v. Borden, Inc.*,
690 A.2d 575 (N.J. 1997) .............................................................................40

*St. George's Dragons, L.P. v. Newport Real Estate
Group, L.L.C.*,
971 A.2d 1087 (N.J. Super. Ct. App. Div. 2009) ...............................31, 32

*Szczubelek v. Cendant Mortg. Corp.*,
215 F.R.D. 107 (D.N.J. 2002)......................................................................20

*Triad at Jeffersonville I, LLC v. Leavitt*,
563 F. Supp. 2d 1 (D.D.C. 2008) ...............................................11, 17, 28, 29

*Turf Lawnmower Repair, Inc. v. Bergen Record Corp.,*
   655 A.2d 417 (N.J. 1995) ...........................................................................11

*Union Ink Co., Inc. v. AT&T Corp.,*
   801 A.2d 361 (N.J. Super. Ct. App. Div. 2002) ........................................19

*United States v. Nordic Village, Inc.,*
   503 U.S. 30 (1992) .....................................................................................31

*VRG Corp. v. GKN Realty Corp.,*
   641 A.2d 519 (N.J. 1994) .......................................................................... 46

*Vanguard Telecomm., Inc. v. S. New England Tel. Co.,*
   900 F.2d 645 (3d Cir. 1990) .......................................................................13

*Wanaque Borough Sewerage Authority v. Twp. of W. Milford,*
   677 A.2d 747 (N.J. 1996) ...........................................................................46

*Weiner v. Quaker Oats Co.,*
   129 F.3d 310 (3d Cir. 1997) .......................................................................23

*White v. Wachovia,*
   No. 08-1007, 2008 U.S. Dist. LEXIS 88112
   (N.D.Ga. July 2, 2008) ......................................................................*passim*

*Wilson v. Amerada Hess Corp.,*
   773 A.2d 1121 (N.J. 2001) ............................................................37, 38, 39

*Winters v. Patel,*
   No. 04-4072, 154 Fed. Appx. 299 (3d Cir. 2005).......................................13

## Statutes                                                    Page(s)

28 U.S.C. § 1291...............................................................................1

28 U.S.C. § 1332(d)(2)(A) ...............................................................1

28 U.S.C. § 1407.............................................................................13

FED. R. APP. P. 32(A)(5) ................................................................48

FED. R. APP. P. 32(A)(7)(B) ...........................................................48

FED. R. CIV. P. 8.......................................................................44, 45

FED. R. CIV. P. 12(b)(6) ........................................................4, 9, 15

GA. CODE ANN. § 10-1-390. ..........................................................33

N.J. STAT. ANN. § 56:8-1...............................................................1, 3

N.J. STAT. ANN. § 56:8-2................................................................18

## MISCELLANEOUS

RESTATEMENT (SECOND) OF TORTS, § 551(2) .......................................23

*Webster's New Int'l. Dictionary* 148 (3d ed. 1993) ............................17

*US Bank Also Plans to Ease Overdraft Penalties*,
N.Y. TIMES, Sept. 24, 2009 ...................................................................33

## STATEMENT OF JURISDICTION

The district court had subject matter jurisdiction under 28 U.S.C. § 1332(d)(2)(A) because the matter in controversy exceeds $5 million, exclusive of interest and costs, and is a putative class action in which some members of the Class are citizens of states different than Appellee-Defendant Sovereign Bank ("Appellee" or "Sovereign").

This Court has appellate jurisdiction under 28 U.S.C. § 1291 because this appeal arises from a final judgment of the district court, entered on June 12, 2009, that dismissed this action with prejudice. (JA005). Plaintiff-Appellant Cortney Hassler ("Appellant" or "Hassler") filed a timely notice of appeal on July 7, 2009. (JA001-04).

## STATEMENT OF ISSUES

1.    Sovereign's account agreement with consumers provides that "[w]hen you make a purchase using your [debit] card, the amount of your purchase is automatically deducted from your checking account." Has Sovereign violated the New Jersey Consumer Fraud Act, N.J. STAT. ANN. § 56:8-1, *et seq.* ("NJCFA") by rearranging these debit purchases, and then posting them in non-chronological order for the sole purpose of maximizing the amount of overdraft fees it can assess, instead of posting

the debit purchases when they occur and in the order in which they actually occur?

2.    Sovereign's account agreement gives it the sole discretion to choose the order in which to post debit purchases to the accounts of consumers, and provides that the order in which it posts them "may not" be the same order in which they occur.  Has Hassler stated a plausible claim for breach of the implied covenant of good faith and fair dealing by alleging that Sovereign *always* re-orders the posting of debit transactions in non-chronological order for the sole purpose of maximizing its overdraft revenue at the expense of consumers?

3.    Has Sovereign been unjustly enriched by collecting multiple overdraft fees from consumers after re-ordering their debit purchases non-chronologically from highest to lowest, where it has told consumers that debit purchases are "automatically" deducted "when" a debit purchase is made?

Pursuant to 3d Cir. L.A.R. 28.1(a)(1), Hassler states that he asserted each of these claims in his Complaint.  (JA033-53).  The district court addressed and dismissed these claims in its Order and Memorandum Opinion dismissing Hassler's Complaint (JA005-029).

## STATEMENT OF THE CASE

Hassler filed this putative class action lawsuit against Sovereign in the United States District Court for the District of New Jersey on November 25, 2008.[1]  Hassler, a consumer who resides in New Jersey, maintains a debit card account with Sovereign.  (JA035 at ¶ 5; JA 038 at ¶ 18).  Hassler alleges that Sovereign posts electronic debit charges to this account in a non-chronological and deceptive fashion.  (JA038-042).  Specifically, Hassler alleges that Sovereign has a uniform policy whereby debit charges incurred are posted to consumers' accounts in descending order (*i.e.*, from the highest charge to the lowest charge), regardless of the order in which the charges actually occurred.  (*Id.*).  As a result of this practice, Sovereign assesses overdraft fees on accounts where there are actually sufficient funds to cover a transaction(s).  (*Id.*).  On two different occasions, Hassler incurred overdraft fees that would not have occurred had Sovereign posted his debit transactions in the order in which they actually occurred.  (JA042-045).

---

[1] Hassler's Complaint is in the Joint Appendix at JA033-JA053.  The docket from the district court proceedings is set forth at JA030-032.

Hassler alleges that this conduct is, *inter alia*, a deceptive and unlawful practice in violation of the NJCFA, and contrary to the language set forth in his account agreement with Sovereign.  (JA048-049).  Hassler also alleges that Sovereign breached the implied covenant of good faith and fair dealing by exercising its unfettered discretion to systematically delay and re-arrange the posting of debit transactions to checking accounts, for the sole purpose of maximizing its overdraft revenue.  (JA0450-51).  Hassler's Complaint asserts claims for a violation of the NJCFA, for breach of the implied covenant of good faith and fair dealing, and for unjust enrichment.  (JA048-052).

Sovereign filed a motion to dismiss Hassler's complaint which, on June 12, 2009, was granted (with prejudice) by the district court pursuant to FED. R. CIV. P. 12(b)(6).  (JA0005).  Hassler filed a timely notice of appeal of this Order and Opinion.  (JA0001-004).

## STATEMENT OF FACTS

**I.     Sovereign's Personal Deposit Account Agreement.**

Sovereign provides consumers with a twenty-nine (29) page standardized Personal Deposit Account Agreement (the "Account

Agreement") in connection with its checking accounts and debit cards.[2]

(JA054-055).  The Account Agreement sets forth the manner in which debit

charges are supposed to be posted to consumers' accounts, and when and

how overdraft fees may be assessed by Sovereign.   In particular, the

Account Agreement contains the following language concerning the timing

of when a debit charge is deducted from an account vis-à-vis when a

purchase is made with the debit card:

> **Sovereign Visa CheckCard or ATM Card:**  You may use ATMs
> located throughout our service area and other locations to
> conduct routine banking transactions.  You may use your
> Sovereign Visa CheckCard or ATM Card (your "Card") at any
> Sovereign ATM or other ATM displaying the logo of an ATM
> network that is authorized by us to accept your Card.
>
> You may use your Card at POS terminals displaying the logo of
> a network that is authorized to accept your Card to pay for
> purchases and to make cash withdraws.  POS terminals are
> often located at gas stations, supermarkets, drug stores, and
> other retail merchants.  You may also use your Visa CheckCard
> to pay for purchases at any merchant displaying the Visa or
> Visa debit symbol.  **When** you make a purchase using your
> Card, the amount of your purchase **is automatically deducted
> from your checking Account.**

(JA064) (emphasis supplied).

---

[2] The Account Agreement was filed in the district court by Hassler in
connection with his Memorandum of Law in Opposition to Sovereign's
Motion to Dismiss and, accordingly, was part of the record below.  (*See*
JA032 at Dkt. Entry 9, Exhibit A).

The Account Agreement also states that Sovereign "[g]enerally"

posts "payment transactions" in descending order (from highest to lowest),

and that this "may" affect whether Sovereign assesses overdraft fees:

> We reserve the right to pay the withdrawals you make from your Account regardless of the method of withdrawal in any order we determine.  This includes withdrawals made at an ATM or by computer, POS purchases, checks, pre-authorized payments and by any other means we make available to you.  The order in which you make withdrawals from your Account may not be the same as the order in which we post those transactions to your Account each business day.  Generally, we post your payment transactions each business day in descending order, starting with the largest payment order that is presented for payment.  This means, for example, that your $900 mortgage payment will be paid before the $100 purchase you made at the supermarket.  The order in which we post your transactions may affect whether you incur fees for insufficient or unavailable funds.

(JA057).

The Account Agreement further states that Sovereign "may refuse a

withdrawal request if the amount of the withdrawal would exceed the

amount of funds available for withdrawal in your Account…"  (JA057).

Similarly, the Account Agreement provides Sovereign with the sole

discretion to determine whether to process a purchase made on an

overdrawn account, whether to assess an overdraft fee for such a purchase,

and acknowledges that Sovereign has the ability to refuse to process such

transactions:

> If you write a check or other order or otherwise request a
> withdrawal from your Account, such as by using an ATM or
> making a purchase using a Visa CheckCard or ATM Card, for
> more money than you have available for withdrawal from your
> Account, we may either permit you to withdraw the funds by
> complying with the payment order or we may refuse to honor
> the payment order.  You may incur a fee for each payment
> order that is presented against your account when you do not
> have sufficient available funds.

(JA060).

## II.    Sovereign's Deceptive Re-Ordering Practices.

Rather than "automatically" deducting debit card purchases "when"

they are made, Hassler alleges that Sovereign routinely enforces a uniform

practice or policy whereby it delays posting debit charges to consumers'

accounts, and subsequently posts them in descending order (*i.e.*, from the

largest to the smallest amounts).  (JA034; JA040).  Hassler also alleges that

Sovereign engages in a non-discretionary policy of *always* re-ordering debit

transactions from largest to smallest in order to maximize its overdraft fee

revenue, which is contrary to the language in the Account Agreement.

(JA040-041)  The Account Agreement provides that debit purchases are

deducted "when" they are made, that Sovereign "[g]enerally" re-orders

transactions, and that such re-ordering "may" affect fees incurred. (*Id.*; JA057). By posting larger charges before smaller charges – without regard to the sequence in which the charges actually occurred – consumers' accounts are depleted faster, and consumers' are assessed overdraft fees that they would not have incurred had Sovereign posted the charges in the actual order in which they occurred. (JA034).

On two different occasions, Hassler was charged multiple overdraft fees in this manner. On August 28, 2008, Hassler had an account balance of $112.35, and initiated a payment of $39.58. (JA008). Later that day, Hassler made a debit card purchase of $140.00. (*Id.*). Instead of charging Hassler a single overdraft fee for the $140.00 purchase, Sovereign manipulated the posting of these transactions, posted the $140.00 to the account first (and thus overdrawing it), and then charged Hassler an overdraft fee for *both* the $39.58 transaction (for which he had sufficient funds in his account when the transaction was made), and the $140.00 transaction (for which he did not). (*Id.*). Sovereign re-ordered the posting

of debit transactions in a similar, non-chronological manner – and charged

Hassler multiple overdraft fees – in September 2008.[3]  (JA008-09).

Each overdraft fee assessed by Sovereign was in the amount of

$33.00.  (JA042-44).  Hassler would not have been charged multiple

overdraft fees had Sovereign actually posted the debit transactions in

chronological order (*i.e.,* if the charges had been "automatically" deducted

"when" they were made). [4]

## III.    The District Court Opinion.

Sovereign filed a motion to dismiss Hassler's complaint pursuant to

FED. R. CIV. P. 12(b)(6), arguing, *inter alia*, that its re-ordering practices were

---

[3] Specifically, in the September transaction Hassler began with an account balance of $126.52, then made a debit purchase of $80.00, and then subsequently withdrew $404.50 from his account.  (JA043).  Sovereign re-ordered these transactions, posted the $404.50 withdrawal first (even though it occurred after the $80.00 debit purchase), and charged Hassler overdraft fees for *both* of these transactions.  (JA043-44).

[4] Hassler does not dispute that he was properly charged a single overdraft fee for the transaction that actually overdrew his account (*i.e.,* for the $140.00 debit purchase in the August transaction, and for the $404.50 withdrawal in the September transaction).  Rather, Hassler challenges Sovereign's systematic practice of always re-ordering the transactions from highest to lowest so as to assess *multiple* overdraft fees - including on debit purchases for which there were sufficient funds in the account at the time the transaction was made.

adequately disclosed in the Account Agreement.[5]  On June 12, 2009, Judge

Simandle issued an Order and Memorandum Opinion granting

Sovereign's motion.  (*See* JA005 and JA006-029, respectively).[6]

Judge Simandle's Opinion was premised on the notion that

Sovereign's re-ordering practices were adequately disclosed in the Account

Agreement.  (*See, e.g.,* JA007).   While Judge Simandle acknowledged that,

for purposes of the NJCFA, the determination of whether certain business

---

[5] Sovereign also argued that Hassler's claims were preempted by the Home Owners' Loan Act and regulations promulgated thereunder by the Office of Thrift Supervision.  (*see* JA012, n.3).  Because the district court's opinion was based solely on the language in the Account Agreement, Judge Simandle expressly declined to address this issue.  (*Id.*).   This Court should not decide this issue because there is an insufficient record, and this complex issue should be left to the district court to decide in the first instance.  *See In re: Schering-Plough Corp. ERISA Litig.*, 420 F.3d 231, 242 (3d Cir. 2005) (declining to address an alternative argument for affirming a district court decision where the defendant had not yet filed an answer, remarking that "[s]ince the case must go back to the District Court, we think these issues would benefit from further elaboration there in the first instance.") (quoting *Callahan v. A.E.V., Inc.,* 182 F.3d 237, 249 (3d Cir. 1999) (Becker, J.)); *Brader v. Allegheny Gen. Hosp.*, 64 F.3d 869, 875 n.1 (3d Cir. 1995) (footnote by J. Alito indicating his preference that this Court not address a possible alternative ground for affirmance where the issue was "a difficult one," and, therefore, it would be "preferable for [it] to be decided in the first instance by the district court.").

[6] The district court's opinion is also available at *Hassler v. Sovereign Bank*, No. 1:08-cv-05800-JBS-KMW, 2009 U.S. Dist. LEXIS 49558 (D.N.J. June 12, 2009).

conduct stands outside the norm of a reasonable business practice in that it will victimize the average consumer is "[o]ften" a jury question,[7] he concluded that the Account Agreement "contain[s] the very information that Plaintiff[] allege[s] was misrepresented, suppressed, or concealed."[8] Specifically, the court held that Sovereign had reserved the right to pay withdrawals in any order it wanted,[9] and further found that the language in the Account Agreement that debit purchases are "automatically" deducted "when" a purchase is made was irrelevant because "…'automatic' simply is not synonymous with 'instantaneous.'"[10]

Judge Simandle next rejected Hassler's argument that Sovereign's use of the word "may" with respect to its discretion to re-order debit

---

[7] JA013-14 (citing *New Jersey Citizen Action v. Schering-Plough Corp.*, 842 A.2d 174 (N.J. Super. Ct. App. Div. 2003); *Turf Lawnmower Repair, Inc. v. Bergen Record Corp.*, 655 A.2d 417 (N.J. 1995)).

[8] JA015 (citing *Delaney v. American Express,* No. 06-5134, 2007 U.S. Dist. LEXIS 34699 (D.N.J. May 11, 2009)).

[9] JA015.

[10] JA018 (citing *Triad at Jeffersonville I, LLC v. Leavitt*, 563 F. Supp. 2d 1, 19 (D.D.C. 2008)). Relying on this case and *Webster's New International Dictionary*, Judge Simandle held that "automatic" means "having a self-acting or self-regulating mechanism that performs a required act at a predetermined point in an operation." (*Id.*).

transactions (and whether to refuse to process those transactions) is misleading because, in practice, Sovereign *always* re-orders the transactions from highest to lowest.  (JA019).  The court found that this language indicates that Sovereign "'…has the ability, but is not required, to' reorder customer transactions in precisely the manner Plaintiff complains of."[11] After concluding that the Account Agreement authorized Sovereign's re-ordering practices – and remarking that Hassler did not demonstrate that Sovereign exercised its discretion for an improper motive – the court dismissed the breach of implied covenant of good faith and fair dealing claim.  (JA021-25).   And, based upon this same interpretation of the Account Agreement, Judge Simandle dismissed the unjust enrichment claim because he found that Sovereign's conduct was authorized under the contract.  (JA025-26).

Hassler's complaint was dismissed with prejudice.  (JA027-029). Hassler filed a timely Notice of Appeal.  (JA001-004).

---

[11] JA020 (quoting *Netflix, Inc. v. Blockbuster, Inc.*, 477 F. Supp. 2d 1063, 1071 (N.D.Cal. 2007)).

## STATEMENT OF RELATED CASES AND PROCEEDINGS

This case has not been before this Court previously.  Aside from this action, Hassler is not aware of any related cases or proceedings against Sovereign.

## STANDARD OF REVIEW

The district court's decision, and all of the issues raised in this appeal, involve the construction of the terms of a contract.   This is a legal question that is reviewed by this Court *de novo*.  *See Winters v. Patel*, No. 04-4072, 154 Fed. Appx. 299, 303 (3d Cir. 2005) ("The construction of a contract is generally a legal issue that is reviewed *de novo*.") (quoting *Vanguard Telecomm., Inc. v. S. New England Tel. Co.*, 900 F.2d 645, 650 (3d Cir. 1990)); *Farash & Robbins, Inc. v. Fleet Bank*, No. 07-3411, 326 Fed. Appx. 77, 83 (3d Cir. 2009) ("We review a district court's construction of contract terms *de novo*.") (citing *Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 53 n.2 (3d Cir. 2001)).

## SUMMARY OF ARGUMENT

Sovereign's uniform practice of re-ordering debit transactions from highest to lowest, delaying the posting of debit purchases, and posting debit purchases in non-chronological order is deceptive and directly

contrary to the language set forth in the Account Agreement.  In pertinent part, the Account Agreement provides that "[w]hen you make a purchase using your [debit] Card, the amount of your purchase is automatically deducted from your checking account." (JA064) (emphasis supplied).

Hassler has stated a plausible claim under the NJCFA based on Sovereign's practice of manipulating the posting of debit transactions.  The NJCFA is a broad statute that the New Jersey Legislature has made clear should be liberally construed in favor of protecting consumers.  The issue with respect to Hassler's NJCFA claim is whether the Account Agreement has the capacity to mislead the average consumer into believing that debit purchases are, in fact, "automatically" deducted "when" they are made. This is a question for the jury to decide based on a factual record, not the district court on a FED. R. CIV. P. 12(b)(6) motion to dismiss.  And the district court's conclusion that Sovereign's re-ordering practices were sufficiently disclosed in the Account Agreement was erroneous because (i) in this context, the word "automatically" means "immediately," and (ii) the words "automatically deducted from your checking account" are modified by "is [automatically deducted]" and "[w]hen you make a purchase."

Hassler has also stated a plausible claim for breach of the implied covenant of good faith and fair dealing. Specifically, Sovereign purports to have the sole discretion in the Account Agreement to determine (i) the order in which debit transactions are posted to an account, and (ii) whether to assess an overdraft fee when there are insufficient funds in an account. Sovereign violated its duty of good faith and fair dealing by always posting the debit transactions from highest to lowest, and by charging multiple overdraft fees based on this manipulation. Contrary to the district court's decision, Hassler has adequately pled that Sovereign engaged in this deceptive conduct for an improper purpose. And the district court's decision dismissing this claim and the NJCFA claim is directly contrary to closely analogous overdraft cases that have recently been decided against other banks (which were not cited by the district court).

Finally, the district court erred by dismissing Hassler's unjust enrichment claim, which was expressly pled in the alternative to the other counts. The Account Agreement does not authorize Sovereign to engage in its delayed re-ordering practices and, under New Jersey law, an unjust enrichment claim is viable where it is premised on the theory that the

defendant was unjustly enriched beyond its contractual rights. That is precisely what Hassler alleged below.

Hassler respectfully requests that the district court's Order dismissing these three claims be reversed in its entirety, and that this case be remanded for further proceedings.

## ARGUMENT

### I. The District Court Erred In Holding That The Account Agreement Authorized Sovereign To Re-Order And Manipulate The Posting Of Debit Transactions In The Manner Alleged By Hassler.

The Account Agreement clearly states that "when" a consumer makes a purchase with a debit card issued by Sovereign, "the amount of [the] purchase is automatically deducted from your checking Account." (JA064). This unambiguous language is expressly contrary to Sovereign's conduct. Specifically, Hassler alleges that instead of "automatically" deducting debit transactions "when" they are made, Sovereign delays posting debit purchases, and then re-orders them from highest amount to lowest amount for the sole purpose of maximizing its overdraft fee revenue. (*See, e.g.,* JA034). Hassler respectfully submits that the district court's conclusion to the contrary was erroneous.

- 16 -

**A.**    **The District Court Did Not Apply The Correct Legal Standard In Determining Whether Sovereign Violated The NJCFA.**

The district court's reliance on the literal dictionary definition of the word "automatic" is not the proper prism through which to view Hassler's NJCFA claim.[12]  Instead, Hassler's NJCFA claim should be reviewed under well-established NJCFA jurisprudence, pursuant to which the question is whether Sovereign's Account Agreement has the capacity to mislead the average consumer.  For the reasons set forth below, it does.

**i.**    **The NJCFA Should be Liberally Construed in Favor of Protecting Consumers.**

The NJCFA prohibits an "unlawful practice," which is broadly defined as:

> [t]he…use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise…."

---

[12] *See* JA018. (citing *Webster's New Int'l. Dictionary* 148 (3d ed. 1993)).  Judge Simandle also cited to *Triad at Jeffersonville I, LLC v. Leavitt*, 563 F. Supp. 2d 1, 9 (D.D.C. 2008) for the proposition that "'automatic' is not synonymous with 'instantaneous.'") (*Id.*).  As set forth below, both of these authorities are inapposite.

N.J. STAT. ANN. § 56:8-2.  While the phrase "unconscionable commercial practice" is not defined in the NJCFA, the Supreme Court of New Jersey has "defined the term as '[t]he standard of conduct contemplat[ing] * * * good faith, honesty in fact and observance of fair dealing.'" *Meshinsky v. Nichols Yacht Sales, Inc.*, 541 A.2d 1063, 1067 (N.J. 1988) (quoting *Kugler v. Romain*, 279 A.2d 640, 652 (N.J. 1971)).

The conduct specified in the NJCFA as amounting to an "unlawful practice" is disjunctive; as such, proof of "any one of those acts or omissions…will be sufficient to establish unlawful conduct under the [NJCFA]."  *Prof'l. Cleaning and Innovative Building Services, Inc. v. Kennedy Funding, Inc.*, No. 06-1405, 245 Fed. Appx. 161, 166 (3d Cir. Aug. 7, 2007) (citing *Cox v. Sears Roebuck & Co.*, 647 A.2d 454 (1994)).  This Court recently reiterated that "the 'available legislative history of [the NJCFA] demonstrates that the Act was intended to be one of the strongest consumer protection laws in the nation . . . [and] should be construed liberally in favor of protecting consumers.'" *Homa v. Am. Express Co.*, 558 F.3d 225, 232 (3d Cir. 2009) (quoting *Huffmaster v. Robinson*, 534 A.2d 435, 437-38 (N.J. Super. Ct. Law Div. 1986)).

### ii. The Question for the Fact Finder is Whether Sovereign's Account Agreement has the Capacity to Mislead the Average Consumer.

It is well-established that in an action brought under the NJCFA, the test is whether the defendant's conduct "has the capacity to mislead the average consumer." *Union Ink Co., Inc. v. AT&T Corp.*, 801 A.2d 361, 379 (N.J. Super. Ct. App. Div. 2002) (citations omitted). *Accord, Barry v. Arrow Pontiac, Inc.*, 494 A.2d 804, 810 (N.J. 1985) (observing that the test of whether sales material violates the NJCFA is whether it is "misleading to the average consumer")). Moreover, "New Jersey courts have held that "[e]ven if an advertisement is literally true, it may be actionable if 'the overall impression [it] create [s]. . .is misleading and deceptive to an ordinary reader.'" *Adamson v. Ortho-McNeil Pharm., Inc.*, 463 F. Supp. 2d 496, 501 (D.N.J. 2006) (citing *Union Ink Co., Inc.*, 801 A.2d 361). As the *Adamson* court explained, in deciding a FED. R. CIV. P. 12(b)(6) motion to dismiss a NJCFA claim, the district court must "determine whether the statements on which Plaintiff bases her claim can be read as having the capacity to mislead." *Id.*

This "determination whether an advertisement is misleading is ordinarily for the trier of fact -- here the jury -- to decide." *Chattin v. Cape*

- 19 -

*May Greene*, 524 A.2d 841, 852 (N.J. Super. Ct. App. Div. 1987).  *See also, Szczubelek v. Cendant Mortg. Corp.*, 215 F.R.D. 107, 126 (D.N.J. 2002) ("Whether Defendants' actions or omissions constituted an unconscionable commercial practice because [defendants'] disclosure has the capacity to mislead consumers… [is] clearly [a] question[] of fact for a jury to answer.").  As the court in *Chattin* observed, "a jury would appear especially well suited to determine the impact of an advertisement upon 'an average consumer.'"  *Chattin*, 524 A.2d at 852.

In this case, Judge Simandle acknowledged that the determination of whether business conduct stands outside the norm of reasonable business practice "often" presents a jury question, but dismissed Hassler's NJCFA claim because "the parties agreement 'contain[s] the very information that Plaintiff[] allege[s] was misrepresented, suppressed, or concealed'…" (JA014-015) (citing *Delaney v. American Enterprise Life Ins. Co.*, No. 06-5134, 2007 U.S. Dist. LEXIS 34699 (D.N.J. May 11, 2007); *Adamson v. Ortho-McNeil Pharmaceutical, Inc.*, 463 F. Supp. 2d 496 (D.N.J. 2006); *New Jersey Citizen Action v. Schering-Plough Corp.*, 842 A.2d 174 (N.J. Super. Ct. App. Div. 2003)).

Each of these cases, however, is readily distinguishable.  The
plaintiffs in *Delaney* alleged that the defendant induced them into buying
an annuity that contained an initial 1.00% added "bonus" interest rate in
the first year, which the defendant recaptured through allegedly
undisclosed fees and expenses, and by lowering the base rate on the
annuity in subsequent years.  *Delaney*, 2007 U.S. Dist. LEXIS 34699, at *1-2;
*15.  Significantly, the *Delaney* plaintiffs did not allege that the defendants
acted in a manner contrary to their contract by failing to provide the
plaintiffs with the initial bonus interest rate in the first year, or by not
paying the agreed upon minimum base rate in subsequent years.[13]  *Id.* at
*15.  The court dismissed the NJCFA claim after noting that the contract
"unambiguously" stated, *inter alia*, that "in return for the additional first-

---

[13] The *Delaney* plaintiffs' theory was that the defendants breached the
contract by failing to provide them with a "permanent bonus" in
subsequent years, but this was not supported by the agreement, which
"expressly provide[d] that purchasers of the annuity will be credited a
bonus interest rate that is limited to the first year of the annuity…"
*Delaney*, 2007 U.S. Dist. LEXIS 34699, at *4; *10.  Since there was no basis for
the plaintiffs' claims based on the "clearly explained" language in the
contract, there was no reason to let the fact finder decide if a reasonable
consumer could be deceived by the contract. *Id.* at *9-10; *24-25.  Here,
however, Hassler has alleged that by delaying and re-ordering debit
transactions, Sovereign has acted in a manner contrary to the language in
the Account Agreement.

year [bonus] rate on this annuity the base rate [in subsequent years] is lower than it would have been had the additional first-year rate not been applied." *Id.* at *18.

Unlike here, there were no credible allegations that the defendants in *Delaney* actually acted in a manner contrary to their contract. *See Delaney*, 2007 U.S. Dist. LEXIS 34699, at *10 ("…Plaintiffs do not even allege that Defendants failed to meet their obligations as set forth in the [contract]."). Here, Hassler has alleged that Sovereign has failed to adhere to the Account Agreement by (i) failing to "automatically" post debit transactions "when" they occur, and (ii) always reordering debit transactions from highest to lowest amounts, and always charging consumers multiple overdraft fees based on this manipulation. (*See, e.g.*, JA039-042). As such, *Delaney* is inapposite.

Similarly, the NJCFA claim asserted in *Adamson* was based on the theory that the drug manufacturer-defendants misrepresented and concealed the fact that an authorized generic version of a drug was actually

identical to its brand counterpart.[14]  *Adamson v. Ortho-McNeil*

*Pharmaceutical, Inc.*, 463 F. Supp. 2d at 497-499.  The court dismissed the

NJCFA claim after concluding that the defendants' allegedly deceptive

statements about the drugs (including their representation that the brand

and generic drugs were "therapeutically equivalent") were "all accurate

statements."[15]  *Id.* at 502-504.   And in *New Jersey Citizen Action*, the Superior

Court of New Jersey rejected a NJCFA claim, which was based on the

theory that the defendants made misstatements about the efficacy of a

---

[14] The plaintiffs, who purchased the brand version of the drug, claimed that they were overcharged because the identical generic version of the drug was available at a reduced price.  *Adamson*, 463 F. Supp. 2d at 499.

[15] The court also rejected the plaintiff's argument that the "Defendants are under an obligation to inform the public that [the brand and generic drugs] are identical" because "courts have routinely held that competitors have no duty to advertise or sell a competitor's product."  *Adamson,* 463 F. Supp. 2d at 504 (citations omitted).  Given Sovereign's affirmative statements in the Account Agreement here, however, Sovereign has a duty to disclose that it (i) does not automatically post debit transactions when they occur, and (ii) always re-orders them from highest to lowest.  *See generally, Weiner v. Quaker Oats Co.*, 129 F.3d 310, 316 (3d Cir. 1997) (recognizing, in the context of a securities fraud case, a duty to correct prior statements that were untrue when they were made, or if the prior statements were true when made but misleading if left unrevised); RESTATEMENT (SECOND) OF TORTS, § 551(2)(c) (providing that a party to a business transaction is under a duty to disclose subsequently acquired information that will make untrue or misleading an earlier representation that was true or believed true when made)**.**

prescription drug, including "you…can lead a normal nearly symptom-free life again." *New Jersey Citizen Action*, 842 A.2d at 176.  These representations, the court held, were "not statements of fact, but [were] merely expressions in the nature of puffery and thus are not actionable." *Id.* at 177.  These cases are inapposite because the challenged language in the Account Agreement is *not* accurate in light of Sovereign's manipulative re-ordering practices, and Sovereign does not contend that anything in the Account Agreement amounts to puffery.[16]

### iii.    Sovereign's Account Agreement has the Capacity to Mislead the Average Consumer.

When viewed through the proper spectrum – whether the Account Agreement is likely to mislead the average consumer – it is readily apparent that Hassler has pled a viable NJCFA claim.  The instant case is closely analogous to *Miller v. American Family Publishers,* 663 A.2d 643 (N.J. Super. Ct. 1995).  The defendant in that case, an entity that sold magazine subscriptions, promoted "sweepstakes" for large cash prizes in connection with its magazine sales.  *Id.* at 646.  The plaintiffs alleged that the

---

[16] Nor could it: New Jersey courts have explained that puffery "implies simply an exaggerated claim of quality rather than a statement of fact." *Miller v. American Family Publishers,* 663 A.2d 643, 650 (N.J. 1995) (citations omitted).

- 24 -

defendants violated the NJCFA by, *inter alia*, "fraudulently suggest that one has a better chance to win [the sweepstakes] if one buys a magazine than if one does not." *Id.*

The court first acknowledged that "a careful, literal reading of the quoted [allegedly deceptive] language reveals that the words do not actually say what plaintiffs claim they are intended to convey…" *Miller,* 663 A.2d at 649. Nevertheless, the court recognized that "it is likely that a substantial number of readers" would be misled by the defendant's language, which was "intentionally used to create the misleading impression that a magazine subscription will help one's chances of winning the sweepstakes." *Id.* The court thus held that the plaintiff had pled a *prima facie* violation of the NJCFA by demonstrating "that defendant's activities are likely to mislead an average, reasonable consumer." *Id.* at 651. And in denying the defendant's motion for summary judgment as to this count, the court opined that "under a standard of 'good faith, honesty in fact, and observation of fair dealing,' such false implications and suggestions cannot pass muster." *Id.* (quoting *Cox,* 647 A.2d at 462).

Just like the misleading language at issue in *Miller* (which,

technically, could be read as being literally true[17]), the language in

Sovereign's Account Agreement creates the misleading impression that

debit purchases will be posted to consumers' accounts "when" the debit

purchases are made.[18]  Like the language at issue in *Miller,* the Account

Agreement is likely to mislead an average, reasonable consumer, given that

---

[17] *Miller,* 663 A.2d at 649.  In particular, the court noted that the defendant's solicitations contained a disclaimer that "no [magazine] purchase [is] necessary to enter or win," but held that a finding of "literal accuracy will not bar a conclusion that the materials violate the [NJCFA]" because the applicable "test is the 'capacity to mislead' an average consumer."  *Id.* at 652 (citing *Barry v. Arrow Pontiac*, 494 A.2d 804 (N.J. 1985)).  The court remarked that it was not breaking new ground with this rule: "in this and other contexts dealing with fraud, deception, or other misleading representations, courts have consistently rejected literal truth as a defense to what is actually an untrue and misleading presentation."  *Id.  See also id.* at 653-54 (citing cases).

[18] And, at a minimum, the trier of fact should decide the issue of whether Sovereign's conduct violated the NJCFA in light of the language in the Account Agreement – not the Court in the context of a motion to dismiss. *See, e.g., Szczubelek v. Cendant Mortg. Corp.*, 215 F.R.D. 107, 126 (D.N.J. 2002) ("Whether Defendants' actions or omissions constituted an unconscionable commercial practice because [Defendant's] disclosure has the capacity to mislead consumers…are clearly questions of fact for a jury to answer.").

Sovereign does not, in fact, post debit purchases "when" they are made.[19]

Hassler's NJCFA claim should therefore be reinstated.

### B. To The Extent That It Is Appropriate To Resort To A Literal Definition Of The Word "Automatically," It Is Synonymous With "Immediately."

As set forth above, since the pertinent language in the Account Agreement has the capacity to mislead the average consumer, it is not appropriate or necessary to resort to a literal dictionary definition of the word "automatically" to resolve Hassler's NJCFA claim. Even if it were, however, the district court's decision should still be reversed.

In concluding that "'automatic' simply is not synonymous with 'instantaneous,'" the district court relied on two authorities. (JA018). First, Judge Simandle cited to the "applicable definition of 'automatic'" in Webster's New International Dictionary. (*Id.*). This dictionary defines "automatic" as "having a self-acting or self-regulating mechanism that

---

[19] This is particularly true since this case involves the re-ordering and manipulation of *debit* transactions. Unlike a check, which can take several days to process and clear, transactions made with a debit card are instantaneously deducted from an account at the point of purchase. As such, the only thing remaining is for Sovereign to post the charge to the account – which it delays in order to maximize its overdraft revenue by re-arranging the transactions from highest to lowest. This is deceptive, and contrary to the language in the Account Agreement.

performs a required act at a predetermined point in an operation." (*Id.*).

Significantly, however, other reliable sources – including a Thesaurus –

state that synonyms of the word "automatically" include

"extemporaneously, immediately, impromptu, impulsively,

unconsciously."[20]  These synonyms for this word in the Thesaurus are

more appropriate to use than the Dictionary definition,[21] and – at a

minimum – this ostensible discrepancy in synonyms presents a question

best resolved by the trier of fact, not by the district court on a motion to

dismiss.

The other authority relied upon by the district court – *Triad at*

*Jeffersonville I, LLC v. Leavitt* – does not change this result.  (*See* JA018).  This

case was not brought by a consumer asserting a NJCFA claim, but involved

a claim by a Medicare provider against officials at the United States

Department of Health and Human Services related to its liability under a

---

[20] *See* http://thesaurus.reference.com/browse/AUTOMATICALLY
 (Last visited on Sept. 28, 2009).

[21] Indeed, these synonyms are for the word "automatically" – which is the
phrase used in the Account Agreement.  Judge Simandle relied on the
dictionary definition of the word "automatic," which does not appear in
the relevant portions of the Account Agreement.  (*See* JA018).

Medicare provider agreement. *Triad,* 563 F. Supp. 2d at 4. The pertinent issue there was whether the U.S. Department of Health and Human Services' interpretation of its own administrative regulations that used the word "automatic" in the context of re-assigning provider agreements meant "instantaneous." *Id.* at 19 (citing 42 C.F.R. § 489.18)). Under the applicable "deferential standard of review" afforded to an agency's interpretation of its own regulations, the court held that the agency's interpretation of this language was reasonable. *Id.* at 19-20.[22] The instant case, however, does not involve affording an agency deference in its interpretation of its own regulations; it deals with how the word "automatically" is to be read by an average consumer in the twenty-nine (29) page long Account Agreement. *Triad,* therefore, is inapposite.

To the extent that this Court resorts to secondary sources for synonyms of the word "automatically," it should rely on the Thesaurus entries cited above, and disregard the *Triad* case cited by the district court.

---

[22] Further, the Medicare Financial Management Manual specifically explained what the phrase "automatic" meant in the relevant context of that case: "automatic assignment of the existing provider agreement to the new owner means the new owner is subject to all the terms and conditions under which the existing agreement was issued." *Triad,* 563 F. Supp. 2d at at 19.

**C.    The Word "Automatically" Is Modified By "When" [A Purchase] "Is" [Made] In The Account Agreement.**

Even if this Court relies on a secondary source to interpret the word "automatically" to resolve Hassler's NJCFA claim (which it need not), and even if this Court were to subscribe to Judge Simandle's interpretation of the word "automatic" from the Dictionary (which is contrary to how the word "automatically" is defined in the Thesaurus), the district court decision should still be reversed.

Judge Simandle found that, in the context of the Account Agreement, the word "automatically" means that "debit card purchases are deducted from customer accounts in a 'self-acting' fashion (<u>i.e.</u>, without the need for additional action by the customer or by Sovereign)…"  (JA018-019).  This interpretation fails to consider the entire text of the pertinent sentence, which reads "<u>[w]hen</u> you make a purchase using your Card, the amount of your purchase <u>is</u> automatically deducted from your checking Account." (JA064).  Even if "automatically" means a self-acting process, based on the remaining language in this sentence, that self-acting process is set in motion and occurs "when" the debit transaction occurs.

Under well-settled principles of contract interpretation, all of these words must be read together in construing this sentence.[23] *See CTF Hotel Holdings v. Marriott Int'l*, 381 F.3d 131, 137 (3d Cir. 2004) ("When interpreting contracts, we are required to read contract language in a way that allows all the language to be read together, reconciling conflicts in the language without rendering any of it nugatory if possible.") (citing *New Castle Cty. v. National Union Fire Ins. Co.*, 174 F.3d 338, 349 (3d Cir. 1999)); *North Am. Specialty Ins. Co. v. Chichester Sch. Dist.*, No. 99-2394, 2000 U.S. Dist. LEXIS 10745, at *74 (E.D. Pa. July 20, 2000) ("Under well-established principles of contract interpretation, however, a construction which gives effect and meaning to each and every word and phrase is preferred over one which reduces a word or phrase to mere surplusage or which renders a word or phrase meaningless.") (internal citations omitted).   And to the extent that there is any ambiguity in the language of the Account Agreement, it is to be construed against Sovereign.  *See, e.g., St. George's*

---

[23] This is also a well-established canon of statutory construction.  *See, e.g., Mertens* v. *Hewitt Associates*, 508 U.S. 248, 258 (1993) ("We will not read the statute to render the modifier superfluous"); *United States* v. *Nordic Village, Inc.*, 503 U.S. 30, 36 (1992) (declining to adopt a construction that would violate the "settled rule that a statute must, if possible, be construed in such fashion that every word has some operative effect").

*Dragons, L.P. v. Newport Real Estate Group, L.L.C.*, 971 A.2d 1087, 1098 (N.J. Super. Ct. App. Div. 2009) ("…where the non-drafting party has no opportunity to negotiate the terms of a contract, ambiguities will be construed against the drafter.") (citations omitted).

Whether this Court interprets this language from the perspective of a reasonable consumer for purposes of the NJCFA, resorts to secondary sources to interpret the relevant words and phrases in the Account Agreement, or simply reads the plain language in the Account Agreement, the result in the same:  Sovereign has no basis to delay posting debit transactions, and manipulate them by re-ordering the transactions from highest to lowest.  Since the district court found otherwise – and dismissed Hassler's complaint on that basis – its decision should be reversed.

### D.     Other Courts Have Declined To Dismiss Consumer Fraud Claims In Similar Overdraft Cases Against Financial Institutions.

Finally, two recent decisions by other district courts have declined to dismiss consumer fraud claims asserted against banks for re-ordering

practices similar to Sovereign's here:[24] *White v. Wachovia*, No. 08-1007, 2008 U.S. Dist. LEXIS 8812 (N.D.Ga. July 2, 2008) ("*Wachovia*") and *Gutierrez v. Wells Fargo & Co.*, No. 07-05923, 2008 U.S. Dist. LEXIS 70124 (N.D.Cal. Sep. 11, 2008) ("*Wells Fargo*")).[25]

The plaintiffs in *Wachovia* alleged that the bank "delays, re-orders, or otherwise manipulates posting transactions to an account and imposes overdraft fees even where the account contains sufficient funds to pay a draft." *Wachovia*, 2008 U.S. Dist. LEXIS 88112, at *3. The complaint alleged that Wachovia had a policy whereby charges incurred are posted to consumers' accounts in order of largest to smallest amounts – even where

[24] Hassler cited and discussed these cases at length in his Memorandum in Opposition to Sovereign's Motion to Dismiss, but neither case was cited by the district court in its opinion.

[25] Tellingly, several large financial institutions, including Wells Fargo & Co., Bank of America Corp., JPMorgan Chase & Co., and U.S. Bank have recently instituted changes with respect to their overdraft policies after putative class action lawsuits challenging their practices were filed by consumers. *See, e.g.*, *US Bank Also Plans to Ease Overdraft Penalties*, N.Y. TIMES, Sept. 24, 2009. These changes include eliminating overdraft fees altogether when a consumer's account is overdrawn by less than $10.00, capping the number of overdraft fees that can be assessed in a single day, limiting the annual amount of overdraft fees that can be charged to an account, and permitting consumers to opt-out of overdraft "protection" (*i.e.*, such that a debit card purchase will not be authorized by the bank where there are insufficient funds in the account). *Id.*

larger charges are received days after smaller charges – thereby imposing overdraft fees even where there are sufficient funds in the account to cover the transaction. *Id.* Among other things, the plaintiffs alleged that Wachovia engaged in unfair or deceptive trade practices in violation of the Georgia Fair Business Practices Act, GA. CODE ANN. § 10-1-390, *et seq.* (the "FBPA"), and breached the deposit agreement by failing to perform its contractual duties in good faith. *Id.* at *8.

The district court held that the plaintiffs had stated a plausible claim for a violation of the FBPA because the complaint alleged "Wachovia charges consumers insufficient funds fees in connection with transactions for which the account had sufficient funds to cover." *Wachovia*, 2008 U.S. Dist. LEXIS 88112, at *30-31. Similarly, the court in *Wells Fargo* – another case challenging a bank's practice of, *inter alia*, re-ordering debit transactions – held that a plaintiff had stated a plausible claim where it was undisputed that she had sufficient funds in her account at the time she made her first debit card transaction, and where the bank assessed overdraft fees after it re-ordered the transactions on the statement from highest to lowest. *Wells Fargo,* 2008 U.S. Dist. LEXIS 70124, at *37-38.

Hassler, just like the plaintiffs in *Wachovia* and in *Wells Fargo*, alleges

- 34 -

that he had sufficient funds in his checking account at the time he made his

initial debit card transactions. *See* (JA042-43). And just like in those cases,

Hassler alleges that he was nevertheless charged an overdraft charge on

this initial debit transaction (and on subsequent transactions) as a result of

the bank's practice of re-ordering transactions from highest to lowest. *Id.*

Hassler avers that this is a deceptive and misleading commercial practice in

light of Sovereign's affirmative statements that (i) debit transactions are

"automatically" deducted from checking accounts "when" they are made,

and (ii) Sovereign may (or may not) re-order debit transactions from

highest to lowest. (*See* JA039-040). As such, Hassler has pled a viable

NJCFA claim.

## II.    Sovereign Has Violated The Implied Covenant Of Good Faith And Fair Dealing By *Always* Re-Ordering Debit Transactions From Highest To Lowest.

 Judge Simandle next dismissed Hassler's claim for breach of the

covenant of good faith and fair dealing. (JA021-025). While the district

court recognized that it is "well established" under New Jersey law that

"[e]very party to a contract…is bound by a duty of good faith and fair

dealing in both the performance and enforcement of the contract,"[26] it dismissed this claim after concluding that Hassler failed to suggest that Sovereign exercised its discretion for an "improper motive."[27]  (JA025).  As set forth below, this conclusion ignores the allegations in Hassler's Complaint, and is contrary to recent overdraft cases decided in a similar context.

### A.    Hassler Alleged that Sovereign Re-Ordered Debit Transactions for an Improper Purpose.

Hassler's breach of good faith and fair dealing claim is premised on the fact that Sovereign reserved the sole discretion to determine whether to re-order debit transactions and whether and when to impose overdraft fees but, in fact, always manipulates and re-orders the transactions from highest to lowest.  (*See, e.g.,* JA040-41; JA050-051).   The Complaint was brought on behalf of Hassler and similarly situated consumers who were harmed by Sovereign's "bad faith assessment and collection of excessive overdraft

---

[26] JA021-022 (quoting *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 864 A.2d 387 (N.J. 2005)).

[27] In analyzing this claim, Judge Simandle also remarked that Sovereign's conduct was authorized by the Account Agreement.  (JA023-24).  As set forth in §(I), *supra*, Sovereign's re-ordering practices were not permitted by the Account Agreement.

charges through the use of a non-chronological and/or largest-to-smallest re-ordering system…" (JA035).  Hassler alleges that Sovereign's "systematic and automated re-ordering of debit transactions…has no relation to the date or time that the transactions were actually received by [Sovereign], nor does it bear any relation to the date or time the debit transaction was initiated by the customer." (JA033).  The Complaint also alleges that the purpose of this scheme was to "deplete the customer's available funds as quickly as possible while maximizing the amount of [overdraft fee revenue] collected by [Sovereign]." (*Id.*).

These allegations are sufficient to demonstrate that Sovereign unilaterally exercised its discretion for an improper motive.  The Supreme Court of New Jersey recently reiterated that the party asserting a claim for breach of the duty of good faith and fair dealing "must provide evidence sufficient to support a conclusion that the party alleged to have acted in bad faith has engaged in some conduct that denied the benefit of the bargain originally intended by the parties." *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 864 A.2d 387, 396 (N.J. 2005) (citations omitted).  The court set forth the "general rule" for such claims: "'[s]ubterfuges and evasions' in the performance of a contract violate the

covenant of good faith and fair dealing 'even though the actor believes his

conduct to be justified.'"  *Id.* (quoting *Restatement (Second) of Contracts*,

*supra*, § 205 comment d).

The Supreme Court of New Jersey's decision in *Bak-A-Lum Corp. v.*

*Alcoa Building Prods.* - which was not cited by the district court below[28] - is

instructive.  351 A.2d 349 (N.J. 1976).  The defendant in that case decided

to terminate its exclusive distributorship agreement with the plaintiff, but

nevertheless continued to encourage the plaintiff to make large purchases

of the defendant's products and expand its warehouse operations.  *Id.* at

---

[28] The two cases principally relied upon by the district court – both of which were decided on motions for summary judgment – do not support the Sovereign's motion to dismiss below.  (*See* JA022-023).  The plaintiff in this Court's decision in *Elliott & Frantz, Inc. v. Ingersoll-Rand Corp.* - an industrial construction equipment sales and service provider – sued its commercial supplier after the supplier terminated their distribution agreement as a result of the plaintiff's "continued unacceptable performance."  457 F.3d 312, 315-317 (3d Cir. 2006).  This Court reviewed the discovery from the record below, and concluded that the plaintiff's conclusory allegations were refuted by the factual record, and further found that "there are no facts to demonstrate, or from which to infer, bad motive or intention."  *Id.* 329-330.  And in *Wilson v. Amerada Hess Corp.*, the Supreme Court of New Jersey held that a lower court had *improperly* granted the defendant's motion for summary judgment with respect to this claim, where the plaintiffs had been denied access to information that they claimed would "provide circumstantial evidence of lack of good faith."  773 A.2d 1121, 1131-1132 (N.J. 2001).  Likewise, Hassler did not have access to any discovery before the district court dismissed the case in its entirety.

350-351.  The Supreme Court concluded that the defendant breached the implied covenant of good faith and fair dealing by keeping silent while simultaneously encouraging the plaintiff to purchase its merchandise, and while it knew that the plaintiff was making capital investments on the assumption that the relationship would continue.  *Id.* at 352.

Here, Hassler's allegations concerning Sovereign's systematic practice of always re-ordering debit transactions (in a manner contrary to the description in the Account Agreement) for the purpose of assessing multiple deceptive overdraft fees is sufficient to demonstrate an improper motive.  As in *Bak-A-Lum*, Sovereign is keeping its practice of manipulating the posting and ordering of debit transactions secret (with the knowledge this practice results in consumers being assessed multiple overdraft fees), while representing that it "automatically" posts debits "when" purchases are made.  Finally, the district court decision below was entered before Hassler had an opportunity to conduct any discovery to support his allegations that Sovereign acted with an improper motive.  *Cf. Elliott*, 457 F.3d at 315 (claim dismissed on a motion for summary judgment).[29]  The

---

[29] *See also Gutierrez v. Wells Fargo*, 622 F. Supp. 2d 946, 951 (N.D.Cal. 2009) (denying financial institution's motion for summary judgment in a re-

district court decision granting Sovereign's motion to dismiss this claim

should accordingly be reversed.[30]

### B. The District Court's Decision Is Contrary To Closely Analogous Cases Decided In A Similar Context.

The *Wachovia* and *Wells Fargo* cases – which were recently decided in

the very context of a bank's re-ordering of debit transactions - further

support Hassler's breach of implied covenant of good faith claim.

The plaintiffs in *Wachovia* executed a standard deposit agreement

with Wachovia which, in terms substantially identical to the Account

Agreement, provided:

> We [Wachovia] **may** pay checks or other items drawn upon your account . . . **in any order determined by us**, even if (1) paying a particular check or item results in an insufficient balance in your account to pay one or more other checks or

---

ordering case where "[b]ased on the factual record, a jury could conclude that Wells Fargo abused its discretion and has an adopted policy of maximizing the number of returned checks or transactions for the sole purpose of maximizing overdraft charges.").

[30] Even if this Court were to conclude that Sovereign's re-ordering practices were adequately disclosed in the Account Agreement – which they are not – the district court's decision regarding the breach of the implied warranty of good faith and fair dealing should still be reversed because "a party's performance under a contract may breach [the implied covenant] even though that performance does not violate a pertinent express term." *Wilson*, 773 A.2d at 1126 (citing *Sons of Thunder v. Borden, Inc.*, 690 A.2d 575 (N.J. 1997)).

other items that otherwise could have been paid out of your account; or (2) using a particular order results in the payment of fewer checks or other items or the imposition of additional fees. Although **we generally pay larger items first**, we are not obligated to do so and, without prior notice to you, **we may change the order in which we generally pay items**.[31]

2008 U.S. Dist. LEXIS 88112, at *2-3 (emphasis supplied). The agreement

also provided that Wachovia had the discretion to choose not to honor a

transaction that would overdraw the account, or alternatively could honor

the transaction, create an overdraft, and impose a service charge for paying

the overdraft.[32] *Id.* at *3.

The *Wachovia* court denied the motion to dismiss the breach of

contract claim which, like Hassler's claim, was based on the implied

covenant of good faith. *Wachovia,* 2008 U.S. Dist. LEXIS 88112, at *10.

---

[31] *Compare id. with* the language from the Account Agreement at JA057: "The order in which you make withdrawals from your Account may not be the same as the order in which we post those transactions to your Account each business day. Generally, we post payment transactions each business day in descending order, starting with the largest payment order that is presented for payment."

[32] *Compare id. with* the language from the Account Agreement JA060: "If you write a check or other order or otherwise request a withdrawal from your Account…for more money than you have available for withdrawal from your Account, we may either permit you to withdraw the funds by complying with the payment order or we may refuse to honor the payment order."

Wachovia argued that the language from the standard deposit agreement quoted above allowed it to pay items drawn on the account in any order, and permitted it to honor transactions on an overdrawn account and impose a fee for doing so. *Id.* at *11.

The plaintiffs argued that Wachovia had not exercised its implied duty of good faith in actually *performing* these contractual obligations in, *inter alia*, "exercising its discretion to determine the order in which transactions are paid…" *Id.* at *11-12. The court agreed, explaining that where the manner of performance "is left more or less to the discretion of one of the parties to the contract, he is bound to the exercise of good faith." *Id.* at *11 (citations omitted). The court concluded that the plaintiffs had stated a plausible claim for breach of the implied covenant of good faith in connection with Wachovia's performance of the contract, stating that it "cannot find as a matter of law that the Deposit Agreement's statement that Wachovia 'may' post items 'in any order'…expressly gives Wachovia the right to manipulate transactions, delay posting indefinitely, and maximize overdraft fees in the ways the Complaint alleges." *Id.* at *12-13.

Similarly, the court in *Wells Fargo* made the following observation

about the disclosure in that case concerning the bank's "discretion" to re-

order transactions:

> It is buried deep within the lengthy statement. It only says the
> bank *might* post items presented against the account in any
> order the bank chooses (unless the law requires otherwise). It
> uses the word "may" rather than "will," leading the customers
> to believe, in the context of the statement, that reordering is not
> automatic but merely an exception - whereas reordering is a
> secret daily routine aimed solely at maximizing penalty
> revenue for the bank at the expense of the customer.

*Wells Fargo*, 2008 U.S. Dist. LEXIS 70124, at *28-29 (emphasis in original).

As Judge Alsup aptly observed in that case, this language from the account

agreement "shrouds the bank's [re-ordering] practice in vaguely worded

mumbo jumbo."[33]  *Gutierrez v. Wells Fargo & Co.*, 622 F. Supp. 2d at 954.

---

[33] Specifically, the bank's disclosure contained the following language:
> **Order of Posting.** The Bank may post items presented against
> the Account in any order the Bank chooses, unless the laws
> governing your Account either requires or prohibits a
> particular order. For example, the Bank may, if it chooses, post
> items in the order of the highest dollar amount to the lowest
> dollar amount. The Bank may change the order of posting items
> to the Account at any time without notice.

*Gutierrez v. Wells Fargo & Co.*, 622 F. Supp. 2d 946, 954 (N.D. Cal. 2009).
Judge Alsup found that "[t]his language does nothing more than give
discretion to the bank and once, again, <u>that measure of discretion must be
exercised subject to good faith and fair dealing and not so as to maximize</u>

Subsequent to this decision – and after the close of fact discovery –

Wells Fargo filed a motion for summary judgment on the grounds that it

was authorized it to post debit card transactions in any order that it

wished.  *Gutierrez v. Wells Fargo & Co.*, 622 F. Supp. 2d 946, 951 (N.D.Cal.

2009).   The court held that it was not authorized to engage in this conduct

under the Uniform Commercial Code and, significantly, also set forth an

"alternative holding" - based on the common law duty of good faith and

fair dealing - to reach its conclusion that Wells Fargo had no basis to re-

order debit transactions.   *Id.* 952-953.  Specifically, the court explained that

> where a contract confers on one party a discretionary power
> affecting the rights of the other, a duty is imposed to exercise
> the discretion in good faith and in accordance with fair dealing.
> Applying that rule here, <u>even if the bank-depositor contract
> confers discretion on the bank as to the sequence of honoring
> presentments, the bank must exercise its discretion in
> accordance with fair dealing and cannot exercise its discretion
> to enrich itself by gouging the consumer.</u> Put differently, even if
> the bank-depositor contract purports to allow the bank to post
> in any order it wishes, such discretion remains subject to the
> bank's duty of good faith and fair dealing. There is a duty of
> good faith and fair dealing to honor checks in such a way as to

<u>bank revenue and to penalize customers as much as possible</u>." *Id.*
(emphasis supplied).  He expressly rejected Wells Fargo's argument that,
by entering into a deposit account agreement with this discretionary
language, consumers were consenting to the bank's deceptive re-ordering
practices. *Id.*

> be fair to the consumer and that discretionary power cannot be exercised so as to pile on ever greater penalties on the depositor, which is exactly what Wells Fargo seems to be doing, or so a reasonable jury could conclude.

*Id.* (citing *Perdue v. Crocker Nat'l Bank,* 38 Cal. 3d 913, 923 (Cal. 1985)) (emphasis supplied).  This is precisely what Hassler has alleged here.  Just like in *Wells Fargo*, a reasonable jury in this case could conclude that Sovereign has a practice of posting debit transactions in a sequence that will maximize its overdraft revenue at the expense of consumers, and for an improper purpose.

Based on the holding in *Wachovia* and the above analysis from *Wells Fargo*, Hassler has stated a viable claim for breach of the implied warranty of good faith and fair dealing.  Moreover, Sovereign's motion to dismiss this claim should have been denied for the separate reason that the question of whether Sovereign performed its contractual obligations "in good faith is a fact question that cannot be resolved at this stage." *Wachovia,* 2008 U.S. Dist. LEXIS 88112, at *14.  Accordingly, the lower court decision should be reversed, and this claim should be reinstated.

**III.    Sovereign Has Been Unjustly Enriched By Re-Ordering The Debit Transactions In The Manner Described In The Complaint.**

Finally, Judge Simandle dismissed Hassler's claim for unjust enrichment.   (JA025-027).  The district court correctly observed that to state a claim for unjust enrichment under New Jersey law, a plaintiff must allege "(1) that the defendant has received a benefit from the plaintiff, and (2) that the retention of the benefit by the defendant is inequitable." (JA025) (quoting *Wanaque Borough Sewerage Auth. v. Twp. of W. Milford*, 677 A.2d 747, 753 (N.J. 1996)).  The court concluded, however, that Hassler failed to satisfy the second prong of this test because Sovereign was not enriched beyond its contractual rights.  (JA026-26) (citing *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519 (N.J. 1994)).  In other words – and based on the district court's previous analysis of the Account Agreement – Judge Simandle found that Sovereign was "expressly authorized" to re-order "payment transactions" from highest to lowest, which "could" result in the assessment of overdraft fees.  (*Id.*).

As set forth above, Hassler respectfully submits that the district court's conclusion that the Account Agreement "expressly authorized" Sovereign's deceptive re-ordering practices is not supported by that

contract.  *See* §§ (I)(B)-(C), *supra.*  Accordingly, Sovereign was enriched

beyond its contractual rights under the Account Agreement, and Hassler

has therefore pled a plausible alternative claim for unjust enrichment.  *See*

*Palmeri v. LG Electronics USA, Inc.,* No. 07-5706, 2008 U.S. Dist. LEXIS 58374,

at *13-18 (D.N.J. July 30, 2008) (applying New Jersey law in declining to

dismiss an unjust enrichment claim - which was pled in the alternative to

breach of contract claims – where the plaintiff alleged that the defendant

had been unjustly enriched by selling a defective product to the plaintiff)

(Greenaway, J.). [34]  The district court decision dismissing Hassler's unjust

enrichment claim should accordingly be reversed.

## <u>CONCLUSION</u>

For all of the foregoing reasons, Hassler respectfully submits that the

district court's Order granting Sovereign's motion to dismiss should be

reversed, and this case should be remanded for further proceedings.

Dated:    October 5, 2009

/

/

/

/

---

[34] Pursuant to FED. R. CIV. P. 8(d), Hassler expressly pled his unjust
enrichment claim in the alternative to the other counts.  (*See* JA051).

Respectfully submitted,


**CHIMICLES & TIKELLIS LLP**

*/s/ Joseph G. Sauder*
Joseph G. Sauder (PA ID No. 82467)
Benjamin F. Johns (PA ID No. 201373)
361 W. Lancaster Avenue
Haverford, PA  19041
Telephone: (610) 642-8500
Facsimile:   (610) 649-3633
E-mail:       JGS@Chimicles.com
                    BFJ@Chimicles.com


**LAW OFFICE OF CHRISTOPHER G. HAYES**
Christopher G. Hayes (PA ID No. 57253)
225 South Church Street
West Chester, PA 19382
Telephone: (610) 431-9505
Facsimile:   (610) 431-1269
E-mail:       chris@chayeslaw.com


***Attorneys for Plaintiff-Appellant***

# CERTIFICATE OF BAR MEMBERSHIP

The undersigned hereby certify that we are members of the bar of

this Court.


*/s/ Joseph G. Sauder*
Joseph G. Sauder


*/s/ Benjamin F. Johns*
Benjamin F. Johns


*/s/ Christopher G. Hayes*
Christopher G. Hayes

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

1.      This brief complies with the type-volume limitations of FED. R. APP. P. 32(a)(7)(B) because this brief contains 10,114 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally-spaced typeface font (14-point Book Antiqua), and includes serifs.

*/s/ Benjamin F. Johns*
Benjamin F. Johns

## <u>CERTIFICATION OF ELECTRONIC FILING AND VIRUS CHECK</u>

1.       I hereby certify that the text of the electronic PDF version of the foregoing Brief of Plaintiff-Appellant that was filed electronically with the Court is identical to the text of the hard copies of the brief that were filed with the Court and served on Counsel.

2.       I hereby further certify that a virus check of the electronic PDF version of the brief was performed using the Symantec AntiVirus software, and the PDF file was found to be virus free.


<u>*/s/ Benjamin F. Johns*</u>
Benjamin F. Johns

- 51 -

## CERTIFICATE OF SERVICE

I, Benjamin F. Johns, hereby certify that on this 5th day of October

2009, I filed ten copies of the foregoing BRIEF OF PLAINTIFF-

APPELLANT**,** and four copies of the APPENDIX thereto**,** with the Clerk of

the Third Circuit Court of Appeals.  I also caused the foregoing to be filed

on this day using the Court's CM/ECF electronic filing system, and served

them in that manner upon all registered users.  In addition, I e-mailed the

foregoing Brief and Appendix to all of the parties below, and sent each of

them two hard copies of the Brief and one hard copy of the Appendix via

UPS overnight delivery:

> Darryl J. May, Esq.
> Ballard, Spahr, Andrews & Ingersoll
> 1735 Market Street, 51st Floor
> Philadelphia, PA 19103
> may@ballardspahr.com
>
> William J. Desantis, Esq.
> Rosemary B. Walsh, Esq.
> Ballard, Spahr, Andrews & Ingersoll
> Plaza 1000 - Main Street,  Suite 500
> Voorhees, NJ 08043
> desantisw@ballardspahr.com
> desantisw@ballardspahr.com

> By:    */s/ Benjamin F. Johns*
> Benjamin F. Johns

# ADDENDUM

LexisNexis (TM) New Jersey Annotated Statutes

*** THIS SECTION IS CURRENT THROUGH NEW JERSEY 213TH
LEGISLATURE ***
*** 2ND ANNUAL SESSION (P.L. 2009 CH. 127 AND J.R. 7) ***
*** ANNOTATIONS CURRENT THROUGH SEPTEMBER 10, 2009 ***

TITLE 56.  TRADE NAMES, TRADE-MARKS AND UNFAIR TRADE
PRACTICES
CHAPTER 8.  FRAUDS, ETC., IN SALES OR ADVERTISEMENTS OR
MERCHANDISE

## GO TO THE NEW JERSEY ANNOTATED STATUTES ARCHIVE
DIRECTORY

N.J. Stat. § 56:8-1 (2009)

§ 56:8-1. Definitions

   (a) The term "advertisement" shall include the attempt directly or indirectly by publication, dissemination, solicitation, indorsement or circulation or in any other way to induce directly or indirectly any person to enter or not enter into any obligation or acquire any title or interest in any merchandise or to increase the consumption thereof or to make any loan;

(b) The term "Attorney General" shall mean the Attorney General of the State of New Jersey or any person acting on his behalf;

(c) The term "merchandise" shall include any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale;

(d) The term "person" as used in this act shall include any natural person or his legal representative, partnership, corporation, company, trust, business entity or association, and any agent, employee, salesman, partner, officer, director, member, stockholder, associate, trustee or cestuis que trustent thereof;

(e) The term "sale" shall include any sale, rental or distribution, offer for sale, rental or distribution or attempt directly or indirectly to sell, rent or distribute;

(f) The term "senior citizen" means a natural person 60 years of age or older.

LexisNexis (TM) New Jersey Annotated Statutes

*** THIS SECTION IS CURRENT THROUGH NEW JERSEY 213TH
LEGISLATURE ***
*** 2ND ANNUAL SESSION (P.L. 2009 CH. 127 AND J.R. 7) ***
*** ANNOTATIONS CURRENT THROUGH SEPTEMBER 10, 2009 ***

TITLE 56.  TRADE NAMES, TRADE-MARKS AND UNFAIR TRADE
PRACTICES
CHAPTER 8.  FRAUDS, ETC., IN SALES OR ADVERTISEMENTS OR
MERCHANDISE

**GO TO THE NEW JERSEY ANNOTATED STATUTES ARCHIVE
DIRECTORY**

N.J. Stat. § 56:8-2 (2009)

§ 56:8-2. Fraud, etc., in connection with sale or advertisement of
merchandise or real estate as unlawful practice

The act, use or employment by any person of any unconscionable
commercial practice, deception, fraud, false pretense, false promise,
misrepresentation, or the knowing, concealment, suppression, or omission
of any material fact with intent that others rely upon such concealment,
suppression or omission, in connection with the sale or advertisement of
any merchandise or real estate, or with the subsequent performance of such
person as aforesaid, whether or not any person has in fact been misled,
deceived or damaged thereby, is declared to be an unlawful practice;
provided, however, that nothing herein contained shall apply to the owner
or publisher of newspapers, magazines, publications or printed matter
wherein such advertisement appears, or to the owner or operator of a radio
or television station which disseminates such advertisement when the
owner, publisher, or operator has no knowledge of the intent, design or
purpose of the advertiser.